UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STREET SPIRIT IP LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC. and FACEBOOK, INC.,<br><br>  Defendants. | No. C 23-00879 WHA<br>No. C 23-00883 WHA<br><br>(Consolidated for Hearing)<br><br>**ORDER GRANTING MOTION TO DISMISS** |
| STREET SPIRIT IP LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC. and INSTAGRAM LLC,<br><br>  Defendants. | |

**INTRODUCTION**

In these nearly identical patent infringement actions, alleged infringers move to dismiss patent owner's complaint. For the following reasons, each motion to dismiss is **GRANTED**.

**STATEMENT**

Patent owner Street Spirit IP LLC asserts U.S. Patent No. 9,282,090, entitled "Methods and Systems for Identity Verification in a Social Network Using Ratings." This patent

1  generally concerns identity verification and management.  The claims recite steps for
2  controlling user access based on identity verification ratings and identity verification rating
3  thresholds.  They thereby address "a continuing need . . . for reducing the incidents of
4  cyberstalking, cyber-bullying, or other forms of cybercrime" ('090 patent 2:2–5).

5      In February 2023, Street Spirit sued alleged infringers Meta Platforms, Inc. and
6  Facebook, Inc. (No. C 23-00879 WHA, Dkt. No. 1).  According to these alleged infringers,
7  Facebook changed its name to Meta in October 2021 (Br. 1 n.1).  In any event, Street Spirit
8  alleges that Meta and Facebook maintain, operate, and administer products and services for
9  providing customer relationship management in a social network system that infringe one or
10 more claims of the '090 patent (Compl. ¶ 10).  According to Street Spirit, Meta and Facebook
11 directly, indirectly, and willfully infringe (Compl. ¶¶ 12–14).

12     In addition, that February, Street Spirit separately sued Meta and Instagram LLC
13 (No. C 23-00883 WHA, Dkt. No. 1).  According to these alleged infringers, Instagram is a
14 wholly-owned subsidiary of Meta (Dkt. No. 3).  Again, in any event, Street Spirit alleges that
15 Meta and Instagram maintain, operate, and administer products and services for providing
16 customer relationship management in a social network system that infringe one or more claims
17 of the '090 patent (Compl. ¶ 10).  And, according to Street Spirit, Meta and Instagram directly,
18 indirectly, and willfully infringe (Compl. ¶¶ 12–14).

19     Both actions involve the same parties, the same lawyers, the same patent, and associated
20 accused products and services.  What's more, the seven-page complaints are themselves
21 substantially the same, though each cites to a different Exhibit B that depicts how the
22 corresponding accused products and services allegedly infringe claim 19.  Upon review of
23 responses to orders to show cause, the actions were related and then consolidated for hearings
24 and discovery but not necessarily trial (No. C 23-00879 WHA, Dkt. Nos. 27, 33).

25     Alleged infringers Meta, Facebook, and Instagram (hereinafter, collectively "Meta") now
26 move to dismiss Street Spirit's complaint in each action on the grounds that the '090 patent
27 claims are ineligible under Section 101 of the Patent Act (No. C 23-00879 WHA, Dkt. No. 17;
28 No. C 23-00883 WHA, Dkt. No. 13).  This order follows full briefing and oral argument.

*United States District Court*
*Northern District of California*

**ANALYSIS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the district court must take all factual allegations in the complaint as true, it may disregard legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555 (citation omitted). "A patent may be determined ineligible at the Rule 12(b)(6) stage 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

Section 101 of the Patent Act governs eligibility. It provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. There is a long-recognized, implicit exception for laws of nature, natural phenomena, and abstract ideas because they are the basic tools of scientific and technological work, and making them patentable would be at odds with the goal of our patent system to foster innovation. *See Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). In *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the Supreme Court set out our two-step test for evaluating patent claims under Section 101.

At *Alice* step one, the district court determines whether the claims are directed to a patent-ineligible concept, like an abstract idea. *Id*. at 218. Here, "[t]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). The Federal Circuit has explained that "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the [i]nternet." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir.

3

2015). "An abstract idea on 'an [i]nternet computer network' or on a generic computer is still an abstract idea." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (quoting *id*. at 1368 n.2).

    Should the district court find that the claims are directed to an abstract idea or another patent-ineligible concept, the analysis continues to *Alice* step two. At this step, the district court examines the elements of the claims to determine whether they contain an inventive concept sufficient to transform the claimed patent-ineligible concept into a patent-eligible application. *Alice*, 573 U.S. at 221. The inventive concept may arise in one or more elements or in an ordered combination of elements. *Id.* at 217. Here, the district court is tasked with assessing whether these elements "do more than simply recite a 'well-understood, routine, conventional activity.'" *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72 (2012)). This requirement is not satisfied by claims that use generic, functional language to achieve their purported solution without reciting "*how* the desired result is achieved." *Two-Way Medical Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Circ. 2017) (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016)).

    Thus, if the claims are directed to an abstract idea at the first step of the *Alice* analysis, and the claims lack an inventive concept sufficient to transform the abstract idea into a patent-eligible application at the second step of the *Alice* analysis, the claims are ineligible under Section 101.

\* \* \*

    Each complaint alleges infringement of "one or more of claims 1–28" of the '090 patent but only provides specific infringement allegations for claim 19 (in Exhibit B) (Compl. ¶ 10). Each motion to dismiss therefore declares claim 19 representative and proceeds to conduct the *Alice* analysis accordingly (Br. 9). Street Spirit responds that claim 19 "is not representative as there are multiple independent claims each including relevant features that are not shared in all independent claims" (Opp. 5 n.5). As pointed out by Meta, however, Street Spirit fails to explain what these relevant features are and *itself continues to focus on claim 19*

4

(*see, e.g.*, Opp. 10, 12–13, 16).

The district court is permitted to "treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citation omitted). Because Street Spirit has failed to demonstrate, let alone discuss, the distinctive significance of other claim limitations, it has "forfeited its ability to argue that other claims are separately patent eligible." *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 588 (Fed. Cir. 2020) (citing *ibid.*). Accordingly, this order will evaluate patent eligibility by way of representative claim 19. That notwithstanding, in doing so, it will briefly explain why other claims do not move the needle.

The representative claim recites "a method of providing security against cybercrimes using an identification-secured network" ('090 patent 46:65–66). In simplified terms, the claimed method can be broken down into six steps: (1) providing an identity management server configured to control end-user access; (2) creating account profiles for members of an identification-secured network; (3) generating an identity rating for each member; (4) determining identity rating thresholds for identity rating-restricted services; (5) updating a member's identity rating based on the member's behavior in real-time; and (6) restricting a member's access to communication with and/or content of another member based on the member's initial or altered identity rating and identity rating access thresholds of another member (*id*. at 47:3–32). The claimed method generates and updates identity *ratings* for members within a network, determines identity rating *thresholds* for access within a network, and uses these ratings and thresholds to restrict access within a network.

Recall, *Alice* step one requires analyzing the character of the claim "as a whole" to determine if it is "directed to excluded subject matter." *Internet Pats.*, 790 F.3d at 1346. Considering the representative claim wholistically, Meta argues that this claim, like all of the '090 patent claims, is "directed to the abstract idea of controlling a user's access to certain content based on verifying the user's identity," which "reflects commonplace human concepts and activities" (Br. 9; *see* Br. 9–15). Specifically, Meta points out that "[h]umans have long

relied on varying degrees of identification to provide access to certain resources," such as requiring a library card to check out a book or a government-issued passport to cross a border (Br. 10). According to Meta, implementing identity verification in a technological environment using generic computer components and result-oriented computer steps does not make the claims nonabstract (Br. 11). Further, Meta asserts that no particular improvement in computer capabilities is claimed that renders the claims nonabstract, unlike in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) (Br. 13).

Street Spirit counters that the analogy to access to resources is "an oversimplification and focuses on the claim elements rather than the claim as a whole" (Opp. 15–16), and that "such a high level of abstraction . . . untethered from the language of the claims . . . all but ensures that the exceptions to [Section] 101 swallow the rule" (Opp. 16 (quoting *Enfish*, 822 F.3d at 1337)). It emphasizes computer-based features, such as "providing an identify [*sic*] management server . . . configured to receive, authenticate, and manage requests for access from multiple end user access devices" and "updating . . . the member's identity rating in real-time during an active session," as evidence of such oversimplification (Opp. 16 (quoting '090 patent 46:65–47:32)).

Meta's analogy, however, is appropriate in this context. The Federal Circuit has characterized similar claims (in scope and complexity) as directed to the abstract idea of controlling access to resources. *See, e.g.*, *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1320 (Fed. Cir. 2020) (describing a patent for a security system that can grant apps access to services on a phone based on end-user permissions as having claims "directed to the abstract idea of controlling access to, or limiting permission to, resources"); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Circ. 2017) (describing two patents for managing access to protected information over untrusted networks as having claims "directed to the abstract idea of controlling access to resources"). These claims likewise had computer-based features, which did not render them any less abstract.

In *Prism*, for example, the Federal Circuit held the following process was directed to an abstract idea:

      (1) receiving identity data from a device with a request for access to resources;

      (2) confirming the authenticity of the identity data associated with that device;

      (3) determining whether the device identified is authorized to access the resources requested; and

      (4) if authorized, permitting access to the requested resources.

696 F. App'x at 1017. The representative claim in *Prism* and the representative claim here both recite steps for identity verification in order to restrict access to computer resources. The representative claim in *Prism* restricted access based on whether a device was authorized, *id*. at 1016, whereas claim 19 restricts access based on whether a member is authorized. If that member is not (based on their identity rating and the identity rating access thresholds of another member), claim 19 restricts the ability to communicate with and/or access the content of another member ('090 patent 47:28–32). Restricting access to resources remains, at its core, an abstract idea.

      Strikingly, Street Spirit makes no effort to distinguish *Prism* and other cases cited by Meta that take a similar tack, instead reasserting, without basis, that Meta's characterization of the claims is an oversimplification (Opp. 18). Rather than addressing the cases directly, it recasts the discussion in terms of *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), arguing that "the claims as a whole . . . provide for an improvement in how the computer system itself operates" (Opp. 18). Relying on *DDR Holdings*, Street Spirit argues that its claimed solution is "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" (*ibid*.). However, Street Spirit fails to recognize a crucial aspect of *DDR Holdings*: the claimed invention there in question provided *a specific, technological improvement* to solve a specific, technological problem. Namely, that claimed invention allowed a host website to display a third-party merchant's products but retain its visitor traffic by displaying product information from within a generated composite webpage rather than a webpage on the third-party merchant's website. *DDR Holdings*, 773 F.3d at 1248–49. The claims here neither offer a specific, technological

7

improvement nor solve a specific, technological problem like the claims in *DDR Holdings*. Rather, they only "perform[] an abstract business practice on the [i]nternet or using a conventional computer," accelerating and expanding identity verification via routine online activity, thereby providing security against (cyber)crimes. Unpersuaded by Street Spirit's citation to *DDR Holdings*, this order finds that the claims are directed to the abstract idea of controlling access to resources — specifically, controlling access based on verification of the user's identity.

When, as is the case here, the claims are directed to an abstract idea under *Alice* step one, we proceed to *Alice* step two. Remember, at this step, the district court considers whether the elements of the claim "contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Chamberlain Grp., Inc. v Techtronic Indus. Co.*, 935 F.3d 1314, 1346 (Fed. Cir. 2019) (internal quotation and citation omitted). It must assess whether the elements go beyond merely reciting a "well-understood, routine, conventional activity." *Universal Secure Registry*, 10 F.4th at 1346 (internal quotation and citation omitted).

Meta aptly observes that all of the claims only use generic computer components and functions (Br. 15–19). Claim 19 serves as a case in point. It recites a "network," "server," "processors," "devices," and "services," as well as functions like creating accounts, generating and updating ratings, determining thresholds, and restricting access ('090 patent 46:65–47:31). The usage of only generic computer components and functions extends to all of the elements of all of the independent and dependent claims. Street Spirit does not dispute this fact.

Given that the elements only call for generic computer components and functions, we turn to whether an inventive concept arises in an ordered combination of the elements. *See Alice*, 573 U.S. at 217. Street Spirit does not meaningfully address this. Relying on *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018), it suggests that the "'090 patent specification provides substantial detail for the claimed invention and its interconnectivity with each claimed element for sufficient specificity to be concrete" (Opp. 14). Street Spirit proceeds to rattle off a brief description of the patent's forty figures "that can be used to perform the solutions of the claimed inventions" (Opp. 14–15). But the cited language from

8

1  *SAP* merely states that claim "specificity [is] required to transform a claim from one claiming
2  only a result to one claiming a way of achieving it." 898 F.3d at 1167. That case did not hold
3  that specificity in the specification alone transforms an abstract idea into a patent-eligible
4  application. After all, "a specification full of technical details about a physical invention may
5  nonetheless conclude with claims that claim nothing more than the broad law or abstract idea
6  underlying the claims, thus preempting all use of that law or idea." *ChargePoint, Inc. v.*
7  *SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). Indeed, Street Spirit emphasizes that
8  the claimed invention is "directed towards specially constructed physical devices that provide a
9  technological improvement to an identification-secured network," but there are no physical
10 devices claimed (Opp. 17).

11 A better argument that could be drawn from Street Spirit's oppositions is that the
12 combination of elements that support real-time processing — in particular, the ability to restrict
13 user access based on a dynamic rating — serves to transform the abstract idea into a patent-
14 eligible application (*see* Opp. 10). There is no question that restricting user access based on a
15 dynamic rating was standard fare at the time of the invention, however. By way of example,
16 most of us have long been familiar with accessing online content by answering security
17 questions (like where you met your spouse). Often, a user who made an unsuccessful attempt
18 to enter a correct password would be prompted to answer a security question, and then perhaps
19 some more. A system was thereby required to determine whether a user's identity was
20 sufficiently verified based on an evolving evaluation of that user. This patent merely claims to
21 accelerate and expand this process in the context of social networks. Generating and updating
22 an identity rating fails to add a technological improvement or otherwise provide something
23 more to transform the nature of these claims. *See NetSoc, LLC v. Match Grp., LLC*, 838 F.
24 App'x 544, 550 (Fed. Cir. 2020).

25 In sum, because the '090 patent claims are directed to an abstract idea at *Alice* step one
26 and lack an inventive concept sufficient to transform the abstract idea into a patent-eligible
27 application at *Alice* step two, they are ineligible under Section 101.
28                                              *   *   *

Rather than meaningfully engage in an *Alice* analysis and substantively address Meta's step one and step two contentions, Street Spirit broadly argues that the claims advance the prior art on three grounds (Opp. 9–10; *see* Reply Br. 4–11). *First*, the claims allegedly identify and address problems that were new at the time of the invention. *Second*, the claims allegedly provide a solution that operates and updates in real-time. *Third*, the U.S. Patent and Trademark Office ("USPTO") found that features of the claims were novel over the prior art. This order has already spoken to why the second argument does not have a bearing on the reasoning here. It will now explain why the same goes for the first and third arguments.

 Starting with the first argument, the *patent itself* recognizes that cybercrime was not a new problem at the time of the invention, explaining that there is "a *continuing need* in the art for a secure system for *reducing the incidents of* cyberstalking, cyber-bullying, or other forms of cybercrime" ('090 patent 2:2–5) (emphasis added). And, in any event, as discussed above, identity verification was not a new solution. The mere application of identity verification within a technological environment, using generic computer components and functions, does not elevate this concept. Once more, the Federal Circuit has repeatedly held that "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment." *Intell. Ventures I*, 792 F.3d at 1366.

 Moreover, Street Spirit posits that the '090 patent addresses the problem of "a social network user becoming a victim of cyberstalking and/or cyber-bullying" (Opp. 9), and the representative claim's preamble describes "[a] method of providing security against cybercrimes" ('090 patent 46:65). Yet this is a *result* rather than a specific, technological solution to a specific, technological problem. The Federal Circuit has also repeatedly held that "[a]n improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea." *Koniklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019). In other words, cybercrime has been a persistent problem, and this patent does not even teach a solution.

 As for the third argument, Street Spirit avers that "further discovery is needed to verify the USPTO finding that the prior art does not include the claimed novel method" (Opp. 10).

10

This is entirely irrelevant to the *Alice* inquiry, however. As Meta correctly observes, a finding of novelty from the USPTO is distinct from a finding of patent eligibility (Reply Br. 11). *See In re Greenstein*, 774 F. App'x 661, 665 (Fed. Cir. 2019) (rejecting an argument that "confuses eligibility with novelty" and holding that "the alleged novelty of Greenstein's investment strategy — an abstract idea — is immaterial to the claims' eligibility"). As the Federal Circuit succinctly put it, "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016).

To the extent that Street Spirit is arguing that the USPTO did not raise ineligibility, it is worth noting, as Meta did at the hearing, that the case law has evolved considerably since the 2015 examination. *Ericsson* and *Prism*, for example, were decided in 2020 and 2017, respectively. In fact, much of the case law that Street Spirit cites in its oppositions postdates the 2015 examination, underscoring the development of Section 101 doctrine in subsequent years. As such, the patent-eligibility analysis (or, more precisely, the lack thereof) that Street Spirit purports to be relevant was not conducted in the context of the contemporary case law. Street Spirit's arguments are unavailing.

## CONCLUSION

For the foregoing reasons, each motion to dismiss is **GRANTED**. Seeing that amendment of Street Spirit's complaints would be futile, dismissal is without leave to amend. *See Voip-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1145 (N.D. Cal. 2019) (Judge Lucy H. Koh), *aff'd sub nom. Voip-Pal.com, Inc. v. Twitter, Inc.*, 798 F. App'x 644 (Fed. Cir. 2020) ("[A]ttorney argument in the complaint cannot save the claims because the purported improvements have not been captured in the claim language.").

**IT IS SO ORDERED.**

Dated: July 31, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE